# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| **JOHN EDWARD PATTERSON,** | ) | **CASE NO. 7:16CV00406** |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| **WARDEN,** | ) | **By: Norman K. Moon** |
| Respondent. | ) | **Senior United States District Judge** |

John Edward Patterson, a Virginia inmate proceeding *pro se*, filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the validity of his confinement on a judgment by the Campbell County Circuit Court. Respondent filed a motion to dismiss Campbell's § 2254 petition, and Campbell responded, making the matter ripe for disposition. After review of the record, I grant the motion to dismiss.

## I.     Factual & Procedural Background

On April 21, 2014, after a bench trial, the Campbell County Circuit Court convicted Patterson of two counts of distributing cocaine, and granted the Commonwealth's motion to nolle prosequi two additional charges of distributing cocaine. The court sentenced Patterson to an active sentence of ten years.

Patterson appealed, but both the Virginia Court of Appeals and the Virginia Supreme Court denied his petitions. Patterson did not file a state habeas petition.

On August 31, 2016,[1] Patterson timely filed the present petition, stating four claims:[2]

---

[1] I dismissed a previous habeas petition without prejudice when Patterson failed to update his address.

[2] In a part of his petition, Patterson mentions, without elaborating, two other grounds: "My co-defendant did not testify when she was in court," and "It was my second conviction instead of my third." Pet'r's Am. Pet. 5 (ECF No. 6). It is unclear whether Patterson meant to include these "claims." Regardless, it is the petitioner's burden to factually support his allegations. Patterson fails to do so; therefore, I will not address them.

1. There was a significant break in the chain of custody of the cocaine because the confidential informant went home after one of the controlled purchases and had an opportunity to tamper with the evidence before turning it in to the police;
2. Trial counsel was ineffective for failing to present evidence to the trial court that the police officers had stated in their reports that Patterson had initially agreed to go to his co-defendant's house to purchase narcotics, not to sell them;
3. When the confidential informant testified, he could not remember whether Patterson or Patterson's co-defendant gave him the drugs; and
4. The video used at Patterson's trial was the wrong video because it showed a controlled purchase that was the basis for one of the charges against Patterson that was dropped.

Respondent moves to dismiss Patterson's claims as procedurally defaulted and/or without merit, and Patterson has responded to the motion.

## II. Procedural Default

"[A] federal court may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest state court." *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000) (citing 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)). To meet the exhaustion requirement, a petitioner "must have presented to the state court both the operative facts and the controlling legal principles." *Kasi v. Angelone*, 300 F.3d 487, 501-02 (4th Cir. 2002) (internal quotation marks and citation omitted). "A claim that has not been presented to the highest state

court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." *Baker*, 220 F.3d at 288 (citing *Gray v. Netherland*, 518 U.S. 152, 161 (1996)).

Patterson properly exhausted claims 1 and 3 by presenting them to the Virginia Supreme Court on direct appeal. However, Patterson never raised claims 2 and 4 in state court, and it would be too late now to do so. *See* Va. Code § 8.01-654(A)(2) (A writ of habeas corpus must be filed in Virginia state court within one year of the conclusion of the direct review process.).[3] Thus, claims 2 and 4 are exhausted but defaulted.

Nevertheless, a state prisoner can obtain federal habeas review of a procedurally defaulted claim if he shows either (1) cause and prejudice or (2) a miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To show cause, a petitioner must demonstrate that there were "objective factors," external to his defense, which impeded him from raising his claim at an earlier stage. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To show prejudice, a petitioner must show that the alleged constitutional violation worked to his actual and substantial disadvantage, infecting his entire trial with error of a constitutional magnitude. *Id.*

Patterson concedes that he failed to exhaust claims 2 and 4 in state court. Further, he has not properly demonstrated cause and prejudice or a miscarriage of justice to excuse his default,[4]

---

[3] Patterson's direct review process ended on September 2, 2015; therefore, he had until September 2, 2016 to file a state habeas petition.

[4] Patterson has not asserted any "external" factor that prevented him from properly exhausting his claims, and he has not proved that the alleged constitutional violation worked to his actual and substantial disadvantage. Further, he has not presented new, reliable evidence of his actual innocence. Therefore, the court need not address potential excuses for his default. *See Burket v. Angelone*, 208 F.3d 172, 183 n.10 (4th Cir. 2000) (holding that as petitioner bears burden to raise cause and prejudice or actual innocence, a court need not consider either if not asserted by petitioner).

and *Martinez*[5] does not apply because Patterson never filed a state habeas petition. *See Jones v. Pa. Bd. of Prob. & Parole*, 492 Fed. App'x 242, 246-47 (3d Cir. 2012) (internal citations omitted) ("[T]he *Martinez* analysis is inapplicable where the criminal defendant did not initiate any state collateral review proceeding whatsoever. Were it otherwise, the *Martinez* rule could potentially apply to any defendant who failed to petition for state collateral review."); *see also Pullen v. Dir., Va. Dep't of Corr.*, No. 7:14CV211, 2015 WL 159533, at *3 (W.D. Va. Jan. 13, 2015); *Anderson v. Clarke*, No. 2:13CV223, 2014 WL 1203032, at *5 (E.D. Va. Mar. 24, 2014). Therefore, I grant the motion to dismiss regarding claims 2 and 4.

### III. Merits

To obtain federal habeas relief, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under 28 U.S.C. § 2254(d), however, the federal habeas court may not grant a writ of habeas corpus based on any claim that a state court decided on the merits unless that adjudication:

(1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Where, as here, the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). Under this standard, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could agree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (omitting internal quotations).

---

[5] In limited circumstances, the Supreme Court has held that ineffective assistance of counsel (or no counsel) in an initial collateral review proceeding may establish cause for default. *Martinez v. Ryan*, 566 U.S. 1 (2012).

Claims 1 and 3 challenge the sufficiency of the evidence at trial.[6] In claim 1, Patterson alleges that a break in the chain of custody of the cocaine occurred when the confidential informant went home after one of the purchases, where the informant might have switched, smoked, stolen, or added drugs before turning evidence over to law enforcement. In claim 3, Patterson asserts that during the confidential informant's testimony at trial, the informant could not remember whether Patterson or Patterson's co-defendant actually gave the informant the drugs.

On direct review, the Virginia Court of Appeals addressed Patterson's sufficiency of the evidence claims, summarizing the Commonwealth's evidence as follows:

> [Jamie] Floyd testified that he was working as a confidential informant for the police, and making undercover drug purchases, on the dates of the offenses. Floyd was acting in this capacity because he was awaiting sentencing for several drug charges, and he hoped that he would receive favorable treatment based upon his cooperation with the police. He described his interactions with [Patterson] on both dates, and stated that he purchased cocaine from [Patterson] on each occasion. On cross-examination, [Patterson] asked Floyd about the specific charges he was facing when he cooperated with the police and about his prior convictions. [Patterson] also asked Floyd to state the number of individuals against whom Floyd had been prepared to testify. Floyd said he did not know, but that it was to his advantage to maximize the number of controlled buys that he made. Floyd also revealed that he earned money from making the purchases and testifying against the defendants in court.
> 
> Without objection, [Officer] Wade testified that Floyd made controlled purchases from eighteen different people in the community. The prosecutor then asked how many of those transactions led to convictions. [Patterson] objected on grounds of relevance. The trial court found that [Patterson's] cross-examination of Floyd had opened the door to the question. Wade then testified that all eighteen defendants, with the exception of [Patterson], were previously convicted . . .
> 
> On the dates in question, Floyd met with Wade, received money to purchase the drugs, and was searched. Floyd was also equipped with a hidden video camera. Floyd then went to the home of Donna Palmer and purchased

---

[6] In his Amended Petition, Patterson states that claims 1 and 3 resulted from "ineffective counseloring." However, since Patterson failed to file a state habeas petition, any possible ineffective assistance components are procedurally defaulted without excuse and barred from federal review under *Baker*, as discussed in Part II.

5

> cocaine from [Patterson]. [Floyd][7] returned to Wade and gave the substances to him.
>
> The Commonwealth introduced video recordings of [Patterson's] interactions with Floyd on November 29 and December 2, 2011. On December 2, 2011, it was Palmer who actually handed Floyd the drugs. In both instances, Floyd gave the money to [Patterson]. On December 2, 2011, [Patterson] commented that he was giving Floyd more than he had on the previous occasion.
>
> Floyd testified that while crack cocaine he had purchased in the past generally was white, the drugs bought from [Patterson] were either a pinkish color or blue. Wade confirmed that the cocaine purchased on the two occasions had either a pink or blue hue.

*Patterson v. Commonwealth*, No. 0879-14-3, at 1-3 (Va. Ct. App. Dec. 17, 2014) (ECF No. 16, Attach. 2).

The appellate court also noted that the trial court had "rejected [Patterson's] argument that Floyd was incredible as a witness," and that in Virginia, "[t]he credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." *Id.* at 4 (quoting *Sandoval v. Commonwealth*, 455 S.E.2d 730, 732 (Va. 1995)). Further, the court emphasized that Floyd's testimony had been corroborated by other evidence in the record, particularly Wade, "who interacted with Floyd both before and immediately after the incidents and monitored them through a hidden camera." *Id.* Accordingly, the Virginia Court of Appeals concluded that "[t]he Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that [Patterson] was guilty of two counts of distributing cocaine as a third or subsequent offense." *Id.*

I agree with the Virginia Court of Appeals' analysis. Patterson's conclusory and factually unsupported allegations that Floyd was an unreliable witness who tampered with the evidence do not merit habeas relief because the Commonwealth produced significant,

---

[7] The Virginia Court of Appeals opinion states that "Appellant returned to Wade," but it is clearly a typo; the court meant that Floyd returned to Wade, not Patterson.

corroborated evidence demonstrating Patterson's guilt. Further, despite Patterson's protests that he is not guilty because he did not *personally* give Floyd the drugs, he participated directly in the transaction and accepted money in exchange for the cocaine. Also, although Floyd was an admitted drug user and criminal, his testimony was bolstered by Wade and hidden camera footage. Regardless, the state court's decision that the evidence was sufficient to support Patterson's conviction was not contrary to, or an unreasonable application of, federal law, or an unreasonable determination of facts. Therefore, I grant the motion to dismiss as to claims 1 and 3.

## IV. Conclusion

For the reasons stated, I **GRANT** the motion to dismiss. An appropriate order will enter this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to Patterson and to counsel of record for Respondent. Further, concluding that petitioner has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(1), a certificate of appealability is **DENIED**.

**ENTER:** This __3rd__ day of July 2017.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE